Welch, J.
The original case was an action brought in the court of common pleas of Muskingum county, by the plaintiffs, upon the official bond of Wolf, given by him as sheriff of said county, to recover the amount of two judgments, which they had recovered against the Central Ohio Railroad Company, executions upon which, had been placed in his hands as such sheriff. The plaintiffs requested the sheriff to levy upon and sell certain articles of-personal property which they pointed out, and which they claimed was1 the property of the railroad company,,and liable to seizure and' sale; but the sheriff refused so to do, and made return of no property.
The property so pointed out was of two descriptions: 1. New articles, such as castings, tires, oil and wood, procured for the running and use of the road, but which had not yet been actually attached thereto, or used; and, 2. Old or castoff articles, such as broken wheels, broken rails, broken tires, and other scrap and refuse iron, which had been used, but which had ceased to be of any value to the company, except for sale, or for the manufacturing of new articles, or in exchange therefor.
*525 The property was in the actual possession of the company, and the value of the old articles alone exceeded the amount of the executions.
The defense set up was, that this property belonged to the mortgagees of the railroad company, and was not liable to be seized on executions against the company.
The cause was submitted to a jury, who, under the instruction of the court, found a verdict of nominal damages for the plaintiffs.
On the trial, it was shown that six several mortgages had been executed by the company, long before the date of the executions, for an aggregate amount, far exceeding the value of the mortgaged property; that the mortgages had become absolute by the non-payment of interest due thereon, and, that the company were still in possession of the mortgaged property, and operating the road.
The mortgages were executed under a provision of the company’s charter, which authorizes it to pledge, by mortgage or otherwise, its “ entire road, franchises, fixtures and equipments, with the income and resources thereof, together with the capital stoeh.”
All of the mortgages, but one, were executed after the passage of the act of February 9,1853 (S. Stat. 242), which provides that such mortgages, when recorded — as these were— “ shall be a good and substantial lien, as well upon the personal as real property of the company.”
The language of the mortgages, so far as regards the description of personal property pledged, is: “All the following present and future to be acquired property ” of the company, . . . “ its engines, tenders, cars, tools, materials, machinery, contracts, and all other personal propeiiy, right thereto, or interest therein.”
Each of the mortgages, with one exception, contained a provision that the company might dispose of, or pledge property not used or necessary to the use or running of the road, provided they should apply all the proceeds to the use and benefit of the road; and the proof showed that the company *526 had exercised this power from time to time, without objection by the mortgagees.
It was claimed on the part of the plaintiffs, that this property, especially the cast-off and refuse articles and iron, were not embraced, or had ceased to be embraced, in the mortgages, and that they were, therefore, entitled to recover its full value, not exceeding the amount of their judgments; while, for the defendants, it was contended that it was covered by the mortgages, and that there should be a verdict for nominal damages, only.
The court charged the -jury, as to the second class of articles, which the court denominated the “ fragments-, clippings and scraps,” that, “ if in the judicious and proper management of the road, it was necessary that these should be worked up in necessary construction and repairs, then such fragments, clippings and scraps are not the subject of sale under plaintiffs’ executions,” and that, in that case, only nominal damages should be assessed, if the amount of the mortgages exceeded the value of the mortgaged property.
The plaintiffs excepted to this charge, and thereupon requested the court to charge the jury as follows:
1. If the fragments, clippings and scraps of iron, etc., described in the testimony, were of such character, that they could not be used or employed by the company upon the road, or in repairs upon the road or its machinery, and were of no service to the company, except to sell, they were subject to sale on plaintiffs’ execution, notwithstanding the fact, that if the company had had a foundry and forge, it might have reworked the fragments into materials for use.
Which charge the court refused to give, and, on the contrary, charged the jury, that in the case above named, such property was not subject to sale, if an economical and proper management of the road required such materials to be worked up, though the company had not sufficient machinery for such purpose.
To which refusal to charge as requested, and the charge as given, the plaintiffs excepted.
*527 They also requested the court to charge:
2. That the selling the scrap iron which the railroad company had not the means of working, within themselves, to another company or person, though coupled with an agreement to receive the pay therefor, in machinery or materials for the road, was not an application of such scrap and other fragments to the uses of the road, within the meaning of the charge of the court previously given to the jury.
The court refused to so charge the jury, but charged, that if the scrap and fragments admitted of being worked over into materials, which could be used by the company, the company might so work it; or, if they had not appliances with which to so work it, they might sell it to others, who had such appliances, in exchange for necessary materials, or get it worked over by others.
To this, also, the counsel excepted.
A motion for a new trial was overruled, and judgment was entered on the verdict for nominal damages, and requiring each party to pay his own costs.
The errors assigned, are: that the court misdirected the jury; that the motion for a new trial, was overruled; and that plaintiffs had no judgment for costs.
It is conceded that the judgment, as to costs, is erroneous, and should so far be reversed, and that the plaintiffs should have a judgment for their costs below.
No error can be well predicated upon the refusal of the motion for a new trial, except for misdirection of the court, because the record does not show what the evidence proved, but only what it tended to prove.
As to the right of the plaintiffs to levy upon the new or after-acquired articles of property, no question seems now to be raised. The case of Coe v. The C. P. I. R. R. Co. (10 Ohio St. Rep. 372), settles any such question in favor of the mortgagees.
That there should be a verdict for nominal damages only, in case the property was all covered by the mortgages, they being far more than its value, is established by the decision *528 of this court, in Coe v. Peacock et al. 14 Ohio St. Rep. 187, and seems in argument not to be denied.
The only remaining question is, was the charge of the court, as to the old and refuse iron correct? We think it was; or, at least, that there is no just ground for exception to it, on the part of the plaintiffs. The court did not charge the jury, that if these fragments and pieces had ceased to be of any value to the company, except for general sale, they were still under the mortgages, and not liable to execution against the company. We are. not, therefore, called upon to decide that question. Whether such property is covered by the terms, “resources,” and “all other property,” used in the laws authorizing the execution of the mortgages, or whether, having been once under the mortgages, these cast-off articles always remain under them, till actually disposed of by the company, are questions which do not arise in the case. The jury have not found that such was the character of the property, and there is no bill of exceptions showing the fact. The case was submitted to the jury, substantially, upon the proposition, that the property was still subject to the mortgages, if a proper management of the road required it to be repaired, recast by the company, or others, or exchanged for new articles. We are content with this proposition, and think that any other construction of these laws, less favorable to the mortgagees, would impair the security which they were evidently designed to give. If such property is liable to execution, where shall we draw the line between the property of the mortgagees and that of the company? When a bridge breaks down, or a tunnel falls in, or when trains are thrown from the track and broken, shall executions be immediately levied upon the stone, the timbers, and the broken cars or engines ? Shall creditors of an insolvent company line its track, and watch for, and seize its worn-out rails, broken wheels, fragments and scraps, as fast as they come to hand; their priority over each other depending on their diligence in the business? Ifj so, it is easy to see, that the security ■ f the mortgagees, which depends, ultimately, and almost solely, upon the ability *529 of the road to run, and produce a revenue, would be seriously impaired. Besides, it would be almost impracticable to mark the boundary, between the rights of the mortgagees and those of the judgment creditors, and the result would be, a scramble between creditors, continual litigation, without any nearer approximation to justice and equity between the parties; or else, it would result merely in causing the company to be more careful and prompt, in disposing of, or using its offals as they came to hand, without benefit -to any one, and to the detriment of the road.
Two members of the court hold — ’though that point is not made by counsel — that the provisions in some of the mortgages, authorizing the company to sell and pledge cast-off and useless articles, applying the proceeds to the working and running of the road, nullify the mortgages, as to these articles, and withdraws them from the lien of the mortgages, as fast as they come to hand; and that the permitted exercise of this power by the company, has the same effect as to the mortgage not containing that provision. But a majority of the court deem the exercise of that power merely incidental, and necessary to the possession and working of the road, and hold that these are merely precautionary provisions, and do not vicíate the mortgages, or conflict with their other provisions.
I know it is said, that there is great hardship in the cases of unsecured creditors of insolvent roads, whose property is all tied up in mortgages for more than they are worth, and that they are enabled thus to practice, and in numerous instances do practice, frauds upon their creditors. In most case3, the very thing for which the credit is given, enters into and becomes part of the road, and enhances its valué, to the benefit of the mortgages. This is all too true, and it is a great evil, and works great injustice. But where is the remedy ? It is not with the court; it is with the party, in refusing to give credit; or it is with the legislature, in an alteration of the laws. I should be glad myself to see a law, by which some form of lien should be given in future to the vendor of an article to be used in running a road, with the right to re *530 take it in a specified time, after the expiration of the credit. Or, there might, perhaps, be a law enacted to sequester and appropriate the income of the road, to the amount of the enhancement of its value. But, even if we had the power, which we have not, to go behind these judgments, and inquire whether the indebtedness originated after the date of the mortgages, and whether the consideration was something that enhanced the value of the property, we would have no power to administer a remedy. The only safety, in the present state of the law, is in refusing trust, or taking security, by the party himself.
If new articles, such as iron, fuel, stone, timber, oil, etc., acquired for .the purpose of running, repairing, or constructing the road, are exempt from execution — and it seems to be admitted that they are — why should not old articles, applicable to the same purposes, be also exempt? If there is any difference between them, it would seem to be in favor of the latter, for they have once been placed under the mortgage, and the question, as to them, is not whether they come under it anew, but whether the lien upon them has ceased. The ■company surely have the power to procure broken fragments ■and old iron from others, for purposes of repairing and recasting their machinery, to the same extent, as they have power to procure new iron, if they deem it profitable or best .■so to do, for the same purpose. If they may do so, why may ■they not, when “proper management” requires it, use their •own old iron for the same purpose?
Counsel for the plaintiffs contend that whenever an article >is detached, and its place supplied by a new article, the old ■ one becomes liable to execution, because, they say, it has ■ceased to be part of the thing mortgaged. They compare the case to cases of mortgages upon real estate, houses, mills, and railroads. Such undoubtedly is the law of mortgages of that description. The mortgage of a mill covers only what continues to be part and parcel of’ the mill. If a wheel is detached and replaced by another, it ceases to be part of the •mill, and the new wheel comes under the mortgage. And *531 such might be the law of these mortgages, were they — as in the ease cited from New York, by counsel — (25 Barb. S. C. R. 284), mortgages upon the “ railroad ” eo nomine, and upon its real estate merely. But such is not the character of the mortgages in question. They pledge, not only the road and real estate, but also the “ engines, tenders, cars, tools, materials, machinery, and all other personal property.;” and the laws under which they are made, authorize the company thus to pledge, not only the road and real estate, but also their “ equipment, franchises, ineome and resources,” and make such mortgages a lien upon all the “personal property” of the company. The language of the laws authorizing the mortgages, as well as that employed in them, is very broad and comprehensive, and we have no doubt, was intended, and has the legal effect to include the description of property specified in the charge of the court; and the jury having found such to be the description of the property in dispute, we think that the verdict and judgment for nominal damages was the legal result, and should not be disturbed.
Judgment reversed as to costs, and affirmed as to all else; and plaintiffs will have judgment for their costs below.
Day and White, JJ., concurred.